UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-CIV-62960-BLOOM/Valle

ARLYNNE JOY CALLAHAN,

    Plaintiff,
v.

CITY OF HOLLYWOOD, MARK HAZEL,
MANUEL RUIZ, RAYNE GUTIERREZ, and
SCOTT ISRAEL,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** came before the Court on the Motion to Dismiss, ECF No. [26] (the "Motion") filed by Defendants Scott Israel, in his capacity as Sheriff of Broward County, Florida ("BSO"), with respect to Plaintiff Arlynne Joy Callahan's ("Plaintiff") Complaint, ECF No. [1]. The Court has carefully reviewed the Motion, all supporting and opposing submissions, the record in this case and applicable law. For the reasons set forth below, the Motion is **GRANTED.**

### I.  BACKGROUND

This action centers on Plaintiff's allegations that police officers and other state employees conducted an illegal search of Plaintiff's residence and falsely arrested Plaintiff in connection with a child protective investigation.

The following facts are alleged in the Complaint. On January 1, 2011, Mark Hazel, a police officer with the City of Hollywood Police Department, and Rayne Gutierrez, an employee of BSO, went to Plaintiff's home located at 2111 North 61st Avenue, Hollywood, Florida. Compl. ¶ 17. Gutierrez did not have a court order authorizing her to enter Plaintiff's home, to

access the children in the home, or to remove the children from the home. *Id.* ¶ 18. Gutierrez understood that there were no immediate health dangers to the children in the home, and was unaware of any recent reports generated by her agency indicating that the home was in any waydangerous to the children. *Id.* ¶ 21. Hazel did not have a search warrant for the premises, nor did he have an arrest warrant for Plaintiff or anyone else at that residence. *Id.* ¶ 19. No crime had been reported and there was no suspicion of a crime about to be committed in the home. *Id.* ¶ 20. Rather, Gutierrez and Hazel went to Plaintiff's residence as part of a routine child protective services follow-up visit. *Id.* ¶¶ 21, 38. Hazel accompanied Gutierrez as required by policy – set by BSO and the City of Hollywood – and understood that the visit was simply a routine follow-up visit. *Id.* ¶¶ 16, 22-23.

Gutierrez and Hazel approached the front door of Plaintiff's home together. *Id.* ¶ 24. Hazel knocked loud enough to scare Plaintiff. *Id.* ¶ 25. Plaintiff immediately advised Gutierrez and Hazel that she would not let them into her residence. *Id.* ¶ 26. She explained that "they did not need to be at her house because Child Net was there the day before [Plaintiff's] grandson went to his father's." *Id.* ¶ 27. Gutierrez acknowledged Plaintiff's comment, but replied that she had "a problem with that" and that she needed to enter the residence "to make sure everything was fine." *Id.* ¶¶ 28-29. Plaintiff indicated that she was home alone with her granddaughter, again stated that her grandson was with his father, and suggested that Gutierrez contact the children's mother by telephone. *Id.* ¶ 31. Plaintiff also expressed that "they were being harassed repeatedly by false reports because of an ongoing custody battle between her daughter and the father or her grandson." *Id.* ¶ 32. Gutierrez continued to insist that Plaintiff permit her and Hazel to enter the home; Plaintiff continued to insist that she was being harassed. *Id.* ¶¶ 33-34.

Gutierrez then threatened that if Plaintiff denied them access to the residence, she would advise the children's father not to return Plaintiff's grandson. *Id.* ¶ 36. Gutierrez made this threat "with the intent to instill fear, intimidate and/or coerce [Plaintiff] into granting access to the home." *Id.* ¶ 37. Plaintiff, scared and intimidated, opened the door. *Id.* ¶¶ 40-42. Hazel "commanded" Plaintiff not to use her cell phone. *Id.* ¶ 43. Plaintiff asked if she could call her lawyer and Gutierrez advised that she could. *Id.* ¶¶ 44-45. Plaintiff attempted to close the door but Hazel forcibly prevented her from doing so. *Id.* ¶ 46.

Hazel, after asking Gutierrez, then called for backup. *Id.* ¶¶ 47-48. This scared Plaintiff further. *Id.* ¶ 49. She then told Gutierrez and Hazel to come inside the residence. *Id.* Hazel kept his foot on the door threshold and said that they would wait for back-up. *Id.* ¶ 50. "Shortly after, additional uniformed, armed officers arrived at the residence in marked units, thus creating a powerful show of authority." *Id.* ¶ 51. Among those officers was Manuel Ruiz. *See Id.* ¶ 53.

Gutierrez, the Complaint implies, inspected the children's bedroom. *See Id.* ¶ 57. During that inspection, Hazel attempted several times to open Plaintiff's bedroom door; Plaintiff interceded, without incident. *Id.* As Plaintiff attempted to call her attorney again, Ruiz suddenly "snatched her cell phone from her and threw it across the living room," damaging the cell phone. *Id.* ¶ 58. When Plaintiff complained that she was within her rights to call her attorney, Ruiz "violently grabbed [Plaintiff's] wrist and arm to restrain her." *Id.* ¶¶ 59-60. Hazel immediately joined in and grabbed Plaintiff by the other arm in the same violent fashion. *Id.* ¶ 61. Plaintiff cried out in pain as she was hurt and bruised. *Id.* ¶ 62. The Complaint further alleges that Hazel and Ruiz detained Plaintiff "in order to prevent her from communicating to her attorney the unlawful acts that she had been subjected to." *Id.* ¶¶ 65-67. Plaintiff was then tightly handcuffed and forcibly removed from her home by Hazel and Ruiz, and placed in the back seat

of Ruiz's marked police vehicle. *Id.* ¶ 73-75. Humiliated in front of her grandchild and neighbors, Plaintiff was left in the car, crying in pain and fear, while Hazel and Ruiz laughed in ridicule. *Id.* ¶¶ 76-78.

Subsequently, Plaintiff was booked on criminal charges, searched, separated from her personal items, her family and home, taken to a hospital for medical diagnosis and treatment, held in jail overnight, and then prosecuted. *Id.* ¶ 85. In addition, according to the Complaint, Hazel and Gutierrez made false statements and withheld exculpatory evidence in connection with the incident. *Id.* ¶¶ 79-82.

Plaintiff further alleges that BSO "had a duty to train Gutierrez in handling visits to homes for the purpose of investigating allegations of child abuse or neglect, in a manner that does not violate" federal or state constitutional rights. *Id.* ¶ 55. However, BSO "failed to properly correct the obvious deficiencies which caused the injuries and damages to Plaintiff, thereby allowing said misconduct to be repeated, and causing and allowing further injuries to be inflicted on unknowing and innocent citizens by its child protective investigators. Rather than correct the aforementioned deficiencies, [BSO] chose to create an atmosphere of lawlessness which encourages child protective investigators to break the law." *Id.* ¶ 88. More specifically,

> [BSO] has maintained a system of review of incidents of abuse of lawful authority such as unlawful entries into homes, illegal searches, false threats, false testimony, reports, intentional withholding of information and/or unlawful prosecutions, among other things, by and through the actions of Child Protective Investigators, and complaints thereof. This system has failed to identify the unlawful conduct by Child Protective Investigators, and has failed to subject Child Protective Investigators who employed such acts to appropriate discipline, and/or closer supervision and/or training, to the extent that it has become the de facto policy and custom of the Broward County Sheriff's Office to tolerate such acts by its Child Protective Investigators.
>
> Prior to the arrest of Plaintiff, [BSO] has maintained a long-standing, wide-spread history of failure to properly hire and/or train and/or supervise and/or discipline its Child Protective Investigators for, among other things, unlawful entries, illegal

> searches, false/unlawful threats, false reports, confessions, detentions and/or arrests and/or prosecutions, even though they had notice of such unlawful conduct by employees.
>
> The foregoing acts, omissions, policies or customs of [BSO] caused deputy sheriffs, including Gutierrez, to believe that acts such as unlawful entries into homes, false threats, false testimony, and/or cooperation in unlawful arrests and/or prosecutions, among other things, was accepted practice and would not be properly investigated, with the foreseeable result that Child Protective Investigators, including Gutierrez, were more likely to make unlawful entries into homes, illegal searches, false or unlawful threats, false testimony, and contribute to the unlawful detention and/or arrests and/or prosecutions.

*Id.* ¶¶ 299-301. "[BSO's] failure to properly train, supervise and discipline child protective investigators under [its] command was the proximate cause of the deprivation of rights suffered by Plaintiff." *Id.* ¶ 89.

Plaintiff asserts one claim in the Complaint against BSO, under 42 U.S.C. § 1983 (Count XXI). The Motion targets only that claim. Gutierrez, Hazel, Ruiz, and City of Hollywood are Defendants in this action, but have made no submission in connection with the instant Motion.

## II.   LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, (2002). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 557 (alteration in original)).  The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."); *Iqbal*, 556 U.S. at 678.  A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim.  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).  While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.  "Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Magluta v.*

*Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### III. DISCUSSION

BSO seeks dismissal of Plaintiff's Section 1983 *Monell* claim pursuant to Fed. R. Civ. P. 12(b)(6). BSO argues that "Plaintiff has not alleged any facts establishing BSO's deliberate indifference to an obvious need for training." Mtn. at 2. While BSO reads the Complaint narrowly, the Court agrees to the extent that Plaintiff's claim against BSO is insufficiently pleaded.

### A. Municipal Liability Under Section 1983 (*Monell* Claim)

Any person acting under color of state law who violates a constitutional right of another is liable for the injured party's losses. 42 U.S.C. § 1983. "Section 1983 provides a fault-based analysis for imposing municipal liability; therefore, plaintiffs must establish that the city was the person who caused them to be subjected to their deprivation." *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986). "[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury th[en] the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "A plaintiff . . . has two methods by which to establish a [municipal actor's] policy: identify either (1) an officially promulgated [] policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the [municipal actor]." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003). "To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice[; h]owever, the custom need not receive formal approval." *Depew*, 787 F.2d at 1499; *see also Smith v. Mercer*, 572 F. App'x

7

676, 679 (11th Cir. 2014) ("A plaintiff must identify a 'consistent and widespread practice' of constitutional deprivations to prove local government liability for an unofficial custom."); *Carter v. Columbus Consol. Gov't*, 559 F. App'x 880, 881 (11th Cir. 2014) ("the challenged practice or custom must be 'so pervasive as to be the functional equivalent of a formal policy'") (quoting *Grech*, 335 F.3d at 1330 n. 6).

"In addition, . . . a municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy 'if the municipality tacitly authorizes these actions or displays deliberate indifference' towards the misconduct." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001) (citing *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)); *Canton v. Harris*, 489 U.S. 378, 388 (1989) (rejecting city's argument that municipal liability can be imposed only where the challenged policy itself is unconstitutional, and finding that "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983"). That is, "a Section 1983 claim for inadequate training exists only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Riley v. Newton*, 94 F.3d 632, 638 (11th Cir. 1996) (quotation omitted); *see also Canton*, 489 U.S. at 389 ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."); *Gold v. City of Miami*, 151 F.3d 1346, 1350-51 (11th Cir. 1998) ("[A]n allegation of failure to train or supervise can be the basis for liability under § 1983 . . . only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights.").

"Deliberate indifference can be established in two ways: by showing a widespread pattern of similar constitutional violations by untrained employees or by showing that the need for training was so obvious that a municipality's failure to train its employees would result in a constitutional violation. *Mingo v. City of Mobile, Ala.*, ---F. App'x---, 2014 WL 6435116, at *6 (11th Cir. Nov. 18, 2014) (citing *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011); *Gold*, 151 F.3d at 1350-52). "To establish a city's deliberate indifference, 'a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action.'" *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009) (quoting *Gold*, 151 F.3d at 1350). "Prior incidents also must involve facts substantially similar to those at hand in order to be relevant to a deliberate-indifference claim." *Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1374 (S.D. Fla. 2013) (citing *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005)).

B.  Plaintiff's "Policy" Claim

BSO focuses on Plaintiff's "failure to train" allegations, addressed below. However, the Complaint can be fairly read to assert a Section 1983 claim based on BSO's official policies. Specifically, the Complaint alleges that it was BSO's policy to have child protective investigators conduct routine follow-up visits, and that it was BSO's policy to have a police officer accompany the BSO child protective investigator during any such routine follow up visit. As stated by Plaintiff, "[s]uch a policy requiring an investigator *and* a uniformed police officer to appear at a citizen's residence without warning and ultimately creating a show of authority certainly gives rise to potential obvious violations of an individual's constitutional rights under the Fourth and Fourteenth Amendments." ECF No. [29] (Response) at 3.

However, Plaintiff's general allegations regarding Defendant's policies and procedures

9

are too conclusory to meet the *Iqbal* standard. *Compare Larosa v. City of Sweetwater*, 2014 WL 235449, at *2 (S.D. Fla. Jan. 22, 2014) (dismissing complaint which "offer[ed] no factual allegations other than [plaintiff's] own arrest and the circumstances surrounding that arrest" to substantiate allegations of a policy or custom); *Ingraham v. Miami-Dade Cnty. Corr. & Rehabilitations Dep't*, 2010 WL 3359445, at *3 (S.D. Fla. May 20, 2010) ("Plaintiff has not alleged any facts demonstrating a widespread practice of such incidents, nor that his was not an isolated incident."); *Moore v. Miami-Dade Cnty.*, 2007 WL 4644629, at *6 (S.D. Fla. Dec. 10, 2007) ("Here, Plaintiff's conclusory allegations of an unofficial practice are simply not enough. Plaintiff has merely plead single isolated incidents . . . These allegations do not suffice under *Monell* and its progeny to impose municipal liability.") *with Fountain v. City of Lakeland*, 2011 WL 3703454, at *5-6 (M.D. Fla. Aug. 23, 2011) ("reluctantly" declining to dismiss complaint alleging "broad statements" of custom or practice based only on factual allegations involving individual defendant's constitutional violations); *Jarrell v. Geo Grp., Inc.*, 2011 WL 5357630, at *4 (M.D. Fla. Oct. 31, 2011) (denying motion to dismiss where complaint alleged policy or custom substantiated only by individual defendant's experience); *Doe v. Faerber*, 446 F. Supp. 2d 1311, 1317 (M.D. Fla. 2006) (plaintiff sufficiently stated section 1983 claim based on repeated incidents involving only the individual plaintiff); *Congleton v. Gadsden Cnty., Fla.*, 2011 WL 2174350, at *4 (N.D. Fla. June 1, 2011) (court could reasonably infer existence of known widespread practice based on allegations of several incidents involving the individual plaintiff). That is, Plaintiff has alleged no facts, other than the incident involving her own arrest, which would plausibly render BSO's policy of having police officers accompany child protective investigators on routine follow up visits inherently generative of constitutional violations.

### C.   Plaintiff's "Failure to Train" Claim

BSO argues that dismissal is warranted based on Plaintiff's failure to allege a pattern of constitutional violations ignored by BSO in order to establish BSO's deliberate indifference. The argument is well taken.

Plaintiff does allege that BSO "maintained a system of review of incidents of abuse of lawful authority" that failed to identify unlawful conduct by its child protective investigators; that BSO maintained a "long-standing, wide-spread history" of failing to properly hire, train and supervise its child protective investigators regarding the same constitutional violations complained of here; and that BSO "failed to properly correct the obvious deficiencies" related to the foregoing that thereby "create[d] an atmosphere of lawlessness which encourages child protective investigators to break the law." In and of themselves, those allegations are too conclusory to support notice pleading. More specific to the Section 1983 context, "[t]o establish . . . 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold*, 151 F.3d at 1350. Plaintiff has presented no such evidence here of notice by BSO of any incidents or a history of similar past violations.

### IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. BSO's Motion to Dismiss, ECF No. [26], is **GRANTED**, as set forth herein.
2. Count XXI of the Complaint is **DISMISSED without prejudice**. *See*, *e.g.*, *Larosa*, 2014 WL 235449 at *2 (dismissing without prejudice for failure to sufficiently allege failure to train)); *Ingraham*, 2010 WL 3359445 at *3 (same).
3. On or before **March 30, 2015**, Plaintiff may file an amended complaint with

CASE NO. 14-CIV-62960-BLOOM/Valle

respect to her claim against BSO under 42 U.S.C. § 1983.  If Plaintiff chooses not to do so by that date, BSO will be dismissed from this action with prejudice.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 13th day of March, 2015.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record