UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-CIV-62960-BLOOM/Valle

ARLYNNE JOY CALLAHAN,

    Plaintiff,
v.

CITY OF HOLLYWOOD, MARK HAZEL,
MANUEL RUIZ, RAYNE GUTIERREZ, and
SCOTT ISRAEL,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court on the Motion to Dismiss, ECF No. [56] (the "Motion") by Defendant, City of Hollywood (the "City"), with respect to Arylenne Joy Callahan's ("Plaintiff") Second Amended Complaint, ECF No. [54] (the "SAC"). The Court has carefully reviewed the Motion, all supporting and opposing submissions, the record in this case and applicable law. For the reasons set forth below, the Motion is in large part denied.

### I.    BACKGROUND

This action stems from Plaintiff's allegations that police officers and other state employees conducted an illegal search of Plaintiff's residence and falsely arrested Plaintiff on January 1, 2011 in connection with a child protective investigation.

Plaintiff filed her initial Complaint on December 30, 2014. ECF No. [1]. On March 16, 2015, ECF No. [34], the Court granted the motion to dismiss filed by Defendant Scott Israel, in his capacity as Sheriff of Broward County, Florida ("BSO"), dismissed Count XXI of the Complaint without prejudice, and granted Plaintiff leave to amend. ECF No. [34] (the "Order"). Plaintiff filed her First Amended Complaint, ECF No. [46], on March 30, 2015. The City and

CASE NO. 14-CIV-62960-BLOOM/Valle

BSO each filed separate motions to dismiss the First Amended Complaint. ECF Nos. [48], [50]. Responding to those motions, Plaintiff sought leave to amend, which the Court granted. *See* ECF Nos. [51], [52]. Plaintiff filed the SAC on April 30, 2015. Ultimately, Plaintiff voluntarily dismissed BSO from this action. *See* ECF Nos. [59], [60]. The City filed the instant Motion on May 19, 2015, and Plaintiff timely responded. ECF No. [63] (the "Response"). The City did not reply in support of its Motion by the required deadline. Gutierrez (an employee of BSO), Hazel and Ruiz (both police officers with the City) are Defendants in this action, but have separately answered and have made no submission in connection with the instant Motion. *See* ECF Nos. [55], [62]. The Motion is now ripe for adjudication.

Familiarity with the factual background and law of the case set forth in the Order is assumed. The SAC includes new allegations that on December 31, 2010 – the day before the subject incident – the Child Abuse Hotline received a report regarding one of Plaintiff's grandchildren. SAC ¶ 20. Gutierrez was subsequently assigned to investigate that report. *Id*. ¶ 21. Gutierrez determined that the child subject of the report was with his father in Pinellas County, Florida, which is outside of Gutierrez's jurisdiction – and was not with Plaintiff. *Id*. ¶ 22. Nevertheless, in accordance with BSO policy, because the mother of the child subject of the report (that is, Plaintiff's daughter) had another child (also Plaintiff's grandchild), Gutierrez went to Plaintiff's home on the day in question to address safety issues regarding the child not mentioned in that report. *Id*. ¶ 23.

Relevant to the instant Motion, Plaintiff asserts (among other claims) a claim for false arrest against the City (Count IV of the SAC) and claims, pursuant to 28 U.S.C. § 1983, for the use of excessive force in violation of Plaintiff's constitutional rights against Hazel (Count X of the SAC) and Ruiz (Count XI of the SAC).

## II.   DISCUSSION

The City seeks dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), of Count X against Hazel and Count XI against Ruiz to the extent Plaintiff asserts them against the officers in their official capacities; seeks dismissal of Plaintiff's false arrest claim, Count IV, also for failure to state a claim; and, in the alternative, seeks to dismiss and/or to strike Plaintiff's request for attorney's fees and prejudgment interest from Count IV.

### A.   Counts X and XI Are Asserted Against Hazel and Ruiz In Their Individual Capacities

The City requests that the Court dismiss Counts X and XI to the extent they are made against officers Hazel and Ruiz, respectively, in their official capacities. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1309 (11th Cir. 2009) ("A claim asserted against an individual in his or her official capacity is, in reality, a suit against the entity that employs the individual."). Plaintiff, however, assures the Court and the City that she has sued Hazel, Ruiz, and Gutierrez "in their individual capacities only, not in their official capacities" as to all Counts in the SAC. Resp. at 2-3. Accordingly, the Court need not address the City's argument.

### B.   Plaintiff's Claim Against the City for False Arrest (Count IV) Is Sufficiently Pleaded

The City argues that Plaintiff's claim for false arrest is legally insufficient because its officers had probable cause to arrest Plaintiff for interfering with the lawful execution of their duty in violation of Florida Statutes section 843.02. The City's argument fails in light of the facts presented by Plaintiff in the SAC.

"To state a claim for false arrest under Florida law, a plaintiff must allege three elements: (1) an unlawful detention and deprivation of liberty against the plaintiff's will; (2) an unreasonable detention which is not warranted by the circumstances and (3) an intentional

3

detention." *Amato v. Cardelle*, 56 F. Supp. 3d 1332, 1334 (S.D. Fla. 2014) (citing *Tracton v. City of Miami Beach*, 616 So.2d 457 (Fla. 3d DCA 1992)) (emphasis added); *see also Jackson v. Biscayne Medical Center, Inc.*, 347 So.2d 721 (Fla. 3d DCA 1977) ("As to false arrest and false imprisonment, plaintiff [is] required to show that the defendants, in procuring her arrest, exercised unlawful restraint and detained her against her will."). However, [p]robable cause is an affirmative defense to a false arrest claim." *Mailly v. Jenne*, 867 So. 2d 1250, 1251 (Fla. 4th DCA 2004); *see also Grix v. Florida Fish and Wildlife Conservation Com'n*, 821 So .2d 315 (Fla. 4th DCA 2002) ("[A] claim for false arrest and false imprisonment will not lie where the officer has probable cause to detain the suspect."). That is, "the existence of probable cause will defeat a civil cause of action for false arrest." *Infante v. Whidden*, 2013 WL 5476022, at *16 (M.D. Fla. Sept. 30, 2013) (citing *Willingham v. City of Orlando*, 929 So. 2d 43, 48 (Fla. 5th DCA 2006); *Brown v. Dillard's Inc*., 170 F. App'x 99, 100 (11th Cir. 2006); *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998); *Weissman v. K-Mart Corp*., 396 So. 2d 1164, 1167 (Fla. 3d DCA 1981)); *Cutino v. Untch*, 2015 WL 178481 at *8 (S.D. Fla. Jan. 14, 2015) (same) (citing *Daniel v. Vill. of Royal Palm Beach*, 889 So. 2d 988, 990 (Fla. 4th DCA 2004)).

"Probable cause exists if, 'at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003) (quoting *Dahl v. Holley*, 312 F.3d 1228, at 1233 (11th Cir .2002) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991))). "The test is an objective one, i.e. a probable cause determination considers whether the objective facts available to the officer at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed." *Lozman v. City of Riviera*

*Beach*, 39 F. Supp. 3d 1392, 1409 (S.D. Fla. 2014) (citing *United States v. Gonzalez*, 969 F.2d 999, 1003 (11th Cir. 1992)).

Florida Statutes, Section 901.15 permits a "law enforcement officer [to] arrest a person without a warrant when: (1) [t]he person has committed a felony or misdemeanor or violated a municipal or county ordinance in the presence of the officer." Fla. Stat. § 901.15. It is a first degree misdemeanor under Section 843.02 to "resist, obstruct, or oppose any officer . . . in the *lawful* execution of any legal duty, without offering or doing violence to the person of the officer." Fla. Stat. § 843.02 (emphasis added). By contrast, "[i]f an arrest is not lawful, then a defendant cannot be guilty of resisting it [under section 843.02]." *Blackshear v. City of Miami Beach*, 799 F. Supp. 2d 1338, 1346 (S.D. Fla. 2011) (quoting *Jay v. State*, 731 So.2d 774, 775 (Fla. 4th DCA 1999)). Because a search or seizure in violation of the Fourth Amendment to the U.S. Constitution is not lawful, an officer cannot have probable cause to conduct an arrest pursuant to Section 843.02 if "no reasonable officer in the deputies' circumstances and possessing their knowledge could have believed" that the search or seizure respected the arrestee's Fourth Amendment rights. *Windsor v. Eaves*, --- F.3d ---, 2015 WL 3533857, at *4 (11th Cir. Jun. 5, 2015) (holding that officers lacked probable cause to make a Section 843.02 arrest where "no reasonable officer in the deputies' circumstances and possessing their knowledge could have believed" their arrest was constitutional under the Fourth Amendment).

The Fourth Amendment establishes "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. "[W]hen it comes to the Fourth Amendment, the home is first among equals. At the Amendment's very core stands the right of a man to retreat into his own home and there be free

from unreasonable governmental intrusion." *Florida v. Jardines*, 133 S.Ct. 1409, 1414 (2013) (quotations omitted).

"In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement . . . [O]ne of those exceptions is that a warrantless search is permissible if it is preceded by a valid consent." *U.S. v. Watkins*, 760 F.3d 1271, 1278-279 (11th Cir. 2014) (quotation omitted). Consent gained through coercion or intimidation does not constitute valid consent. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) (holding that Fourth Amendment requires that "consent was in fact voluntarily given, and not the result of duress or coercion, express or implied"); *Lenz v. Winburn*, 51 F.3d 1540, 1548 (11th Cir. 1995) ("[T]he circumstances surrounding the consent must demonstrate that it was voluntarily given, free of duress or coercion.").

Exigent circumstances may also justify a warrantless search. *See Riley v. California*, 134 S.Ct. 2473, 2494 (2014) ("One well-recognized exception applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment . . . . Such exigencies could include the need to prevent the imminent destruction of evidence in individual cases, to pursue a fleeing suspect, and to assist persons who are seriously injured or are threatened with imminent injury."). In general, "the exigent circumstances exception requires a court to examine whether an emergency justified a warrantless search in each particular case." *Id.*

Accepting the facts contained in the SAC as true, Plaintiff has sufficiently alleged that her detention was intentional, unreasonable, and unlawful in violation of her Fourth Amendment rights. As alleged in the SAC, no warrant was issued with respect to Plaintiff, her residence or any of its inhabitants, and there was no court order authorizing access to Plaintiff's residence.

SAC ¶ 26-27.  Plaintiff alleges that the officers used intimidation and coercion to force her consent to their entry into her home.  *Id*. ¶¶ 46-48.  Specifically, Gutierrez threatened that if Plaintiff denied them access to the residence, she would advise the children's father not to return Plaintiff's grandson – and made this threat "with the intent to instill fear, intimidate and/or coerce [Plaintiff] into granting access to the home."  *Id*. 46-47.  Plaintiff "became fearful and scared, and as a result thereof, opened her front door."  Id. ¶ 48.  When Plaintiff attempted to close the door, Hazel forcibly prevented her from doing so.  *Id.* ¶ 54.  The facts alleged in the SAC further demonstrate the absence of exigent circumstances justifying the officers' entry into Plaintiff's home.  "No one had suspicion to believe that a crime had been committed, was being committed, or was about to be committed at the home."  *Id*. ¶ 28.  Plaintiff's grandchild mentioned in the abuse hotline report was not at Plaintiff's residence – a fact that Gutierrez and the City's officers knew when they determined to conduct their investigation.  *Id*. ¶¶ 20-23.  Gutierrez knew that no abuse report had been filed concerning the child who was in the home and understood that there were no immediate health dangers to any children in the home.  *Id*. ¶ 29.  Rather, Gutierrez and Hazel went to Plaintiff's residence as part of what was and what they understood to be a routine child protective services follow-up visit. *Id*. ¶¶ 23-25, 29-30, 126.

      The facts in *Houston v. Tucker*, 137 F. Supp. 2d 1326 (N.D. Ga. 2000), cited by the City in support of their Motion, provide a foil confirming the validity of Plaintiff's claim here.  There, police were dispatched to the plaintiff's residence specifically to investigate allegations of child abuse.  *Id*. at 1330.  The plaintiff denied the detectives entry and detectives ultimately had to force their way into the house in order to ascertain the children's condition.  *Id*.  As here, "[a]n essential element of the offense [was] that the officer must be engaged in the lawful discharge of his official duties."  *Id*. at 1337.  The court, affirming the propriety of the defendant officer's

7

conduct, explained that the officer had "an affirmative duty to physically ensure that the children were no longer in danger and to investigate whether the alleged child abuse had taken place," and that "a police officer investigating a crime cannot properly discharge his duties by simply accepting the assurances from the victims' family members that they are fine." *Id*. at 1336. By contrast, here (as alleged in the SAC), the Defendants did not go to Plaintiff's home to investigate child abuse, and had no suspicion that that there was any child in any immediate danger in Plaintiff's home. They went for a routine follow up visit. That alone does not justify forced entry into Plaintiff's home.

Because, under the facts alleged, the officers' entry into Plaintiff's home was not lawful, there was no cognizable Section 843.02 resistance or obstruction which could have justified Plaintiff's arrest. Accordingly, Plaintiff's false arrest claim is sufficiently stated.

### C.   Attorney's Fees and Prejudgment Interest in Court IV

The City also seeks dismissal of Plaintiff's request for attorneys' fees and prejudgment interest in Count IV of her SAC. In her Response, Plaintiff agrees to strike the request in Count IV for attorney's fees and prejudgment interest. *See* Resp. at 6. The Court will therefore read Count IV of the SAC as amended by interlineation to eliminate any claims for attorney's fees and prejudgment interest.

### III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The City's Motion to Dismiss, ECF No. [56], is **GRANTED in part**, in that any claims for attorney's fees and prejudgment interest in Count IV of the SAC will not be considered.

2. The City shall file its response to the SAC on or before **July 21, 2015**.

CASE NO. 14-CIV-62960-BLOOM/Valle

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 7th day of July, 2015.

*[signature]*

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:  counsel of record

9